**Frank H. COFFMAN, II, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY d/b/a Metlife and Met Disability and American Home Products Corporation, Defendants.**

No 2:00–1156.

United States District Court, S.D. West Virginia, Charleston Division.

Oct. 29, 2001.

Scott B. Elkind, Greenberg and Bederman, LLP, Silver Spring, MD, for Plaintiff.

Erin Magee Condaras, Jackson & Kelly, Charleston, WV, for Defendants.

## MEMORANDUM OPINION AND ORDER

FEINBERG, United States Magistrate Judge.

Currently pending before the court are the following discovery motions: (1) Plaintiff's Motion to Compel Discovery from Defendants (Document # 43) and (2) Plaintiff's Supplemental Hearing Response Memorandum of Points and Authorities in Opposition to Defendants' Joint Motion to Quash and for Protective Order and Supplemental Motion to Compel and for Sanctions (Document

# 46).  The parties have responded and replied, and the Motions are ripe for decision. (Document ## 48, 54, 55.)

*Attorney/Client Privilege and Work Product Doctrine*

Plaintiff's Motion to Compel Discovery from Defendants seeks production of documents that defendant American Home Products Corporation (AHPC) contends are protected by the attorney/client privilege and the work product doctrine.[1]  Defendant AHPC submitted the at-issue documents to the court for an *in camera* review.  The court has entered an Order filing the at-issue documents under seal.  The documents include various correspondence and other documents among AHPC's corporate counsel, Robert T. Bucari, and AHPC personnel.

▮ Plaintiff argues that the attorney/client privilege does not apply to these documents because they fall under the fiduciary exception to the attorney/client privilege.  Under the fiduciary exception, an ERISA fiduciary cannot assert the attorney/client privilege against a plan beneficiary as to legal advice dealing with plan administration.  In addition, Plaintiff argues that Defendants have waived the attorney/client privilege by disclosing the substance of conversations with the legal department of AHPC in a memorandum dated March 31, 1999, from Stanley M. Lanskey to the Retirement Committee of AHPC, which was copied to Mr. Bucari.

AHPC acknowledges the fiduciary exception to the attorney/client privilege, but argues that this exception does not apply to the documents at issue.  AHPC asserts that the subject documents are not related to the administration of the plan at issue and, therefore, are not subject to the fiduciary exception to the attorney/client privilege. AHPC further argues that it did not waive the attorney/client privilege by virtue of the March 31, 1999, memorandum cited above. AHPC contends that even if the memorandum were subject to the attorney/client privilege, it relates to the administration of the

1.  Counsel for Defendants represents in her response that the privileges are only asserted as to AHPC, as AHPC's co-defendant, Metropolitan Life Insurance Company (MetLife), has not seen and does not possess the documents at issue.

plan and as such, falls under the fiduciary exception to the attorney/client privilege. Finally, AHPC argues that the work product doctrine protects at least some of the documents identified in the privilege log.

Without revealing the substance of the documents at issue, the following documents were submitted *in camera* by AHPC:

(1) July 1, 1997, electronic mail message from Susan Radomsky to Robert T. Bucari, corporate counsel for AHPC, regarding plan document disclosure letter;

(2) July 2, 1997, electronic mail message from Mr. Bucari to Ms. Radomsky regarding plan document disclosure letter;

(3) July 8, 1998, electronic mail message from Mr. Bucari to an unknown individual regarding Plaintiff's disability appeal;

(4) December 11, 1998, facsimile cover sheet from Jeanna Nicotera, Disability Coordinator at AHPC, to Mr. Bucari regarding MetLife's termination of Plaintiff's benefits and upholding decision on appeal;

(5) December 11, 1998, handwritten note on AHPC letterhead from an unknown source to Mr. Bucari regarding contact from Roger Forman, an attorney for the Plaintiff, and indicating that Mr. Bucari had requested Mr. Forman's address;

(6) February 1, 1999, handwritten note from an unknown source to Mr. Bucari enclosing the original long term disability claim and Plaintiff's statement for social security;

(7) March 26, 1999, memorandum from Mr. Bucari to Sandy Weber enclosing correspondence from Mr. Forman dated March 17, 1999;

(8) August 13, 1999, facsimile cover sheet from Ms. Weber to Mr. Bucari with August 10, 1999, draft letter from MetLife to Mr. Bucari;

(9) August 20, 1999, facsimile leader sheet from Mr. Bucari to Ms. Weber with the following reference line: "[h]ere are my comments on the letter." AHPC represents that this is in regards to correspondence from MetLife upholding a previous termination decision; and

(10) May 15, 2001, electronic mail message from Melissa Niechwiadowicz to Mr. Bucari regarding Plaintiff's overpayment of benefits.

Rule 501 of the Federal Rules of Evidence provides that "[e]xcept as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience."

In *In re Allen*, 106 F.3d 582, 600 (4th Cir.1997), the United States Court of Appeals for the Fourth Circuit reiterated the burden of a party asserting the attorney/client privilege:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. [citations omitted].

In the context of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132 *et seq.*, the fiduciary exception to the attorney/client privilege provides that "an employer acting in the capacity of ERISA fiduciary is disabled from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration." *In re Long Island Lighting Co.*, 129 F.3d 268, 272 (2d Cir.1997). Indeed, both Plaintiff and AHPC acknowledge the general parameters of this exception to the attorney/client privilege.

The more difficult task is determining whether the documents at issue reflect fiduciary functions, i.e., ones related to plan man-

agement and administration, or non-fiduciary functions, i.e., ones related to the plan's design or amendment. *Id.* at 271. As stated above, AHPC contends that the documents at issue relate to non-fiduciary duties, while Plaintiff contends that the documents are related to AHPC's fiduciary duties and, therefore, are subject to production pursuant to the fiduciary exception.

■ In a more recent case, the United States Court of Appeals for the Ninth Circuit recognized that cases analyzing the fiduciary exception to the attorney/client privilege

> mark out two ends of a spectrum. On the one hand, where an ERISA trustee seeks an attorney's advice on a matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity, the trustee cannot invoke the attorney-client privilege against the plan beneficiaries. On the other hand, where a plan fiduciary retains counsel in order to defend herself against the plan beneficiaries ..., the attorney-client privilege remains intact.

*U.S. v. Mett,* 178 F.3d 1058, 1064 (9th Cir. 1999). As the court in *Mett* explained, "the fiduciary exception is not an 'exception' to the attorney-client privilege at all. Rather, it merely reflects the fact that, at least as to advice regarding plan administration, a trustee is not 'the real client' and thus never enjoyed the privilege in the first place." *Id.* at 1063. In comparison, "[w]hen an administrator is required to justify or to defend against a beneficiary's claims made because of an act of plan administration, the administrator does not act directly in the interests of the disappointed beneficiary but in his own interests or in the interests of the rest of the beneficiaries." *Geissal v. Moore Medical Corp.,* 192 F.R.D. 620, 624 (E.D.Mo.2000) (citing *Mett,* 178 F.3d at 1063).

*Geissal* is particularly persuasive in the instant matter. In *Geissal,* the plaintiff alleged violations of ERISA following his employer's decision to discontinue his group health plan coverage. The court determined that the attorney/client privilege and the work product doctrine were not applicable to preclude production of counsel's advice and opinions as to plan administrator, which advice and opinions were made prior to the plan's decision and related to the decision denying coverage. *Geissal,* 192 F.R.D. at 625. As to legal advice obtained after the decision to deny coverage, the record indicated that upon denial, the plaintiff retained counsel and "impliedly and expressly suggested to the plan's administrator and to subject counsel that litigation would result if the plan did not retract the termination of ... coverage." *Id.* The court concluded that "[t]hose communications evidence that the interests of Mr. Geissal as a beneficiary of the plan and the interests of the plan administrator in justifying and protecting the decision to terminate sufficiently diverged and differed to warrant the plan administrator in obtaining confidential legal advice on the matter. [citations omitted]." *Id.* at 625–26.

In the instant case, documents 1, 2, 3, 4, 5, 6, 7, 8 and 9 are subject to the fiduciary exception to the attorney/client privilege. These documents were created before the final denial of benefits by MetLife on August 20, 1999. (*See* Letter dated October 12, 2001, to the Clerk attaching August 20, 1999, letter omitted from previous filings (Document # 53).) There is no indication upon review of these documents that Mr. Bucari was consulted for the purpose of defending AHPC against any decision made as to Plaintiff's claim. Rather, it appears that Mr. Bucari was consulted in the context of the claims review process itself.

■ Likewise, the court cannot conclude that these documents are entitled to protection under the work product doctrine. The court has considered the fact that some of the documents referenced above refer to an attorney for the Plaintiff, Roger Forman, who was hired around December of 1998. In addition, Defendant AHPC asserts that in at least two letters from the Plaintiff dated July 10, 1998, and November 13, 1998, to AHPC, the Plaintiff threatened to file a lawsuit if his claim was denied. (*See* Defendants' Memorandum in Opposition to Plaintiff's Motion to Compel, Exhibit A (Document # 54).) The documents potentially affected include documents 4 through 9. The court has reviewed these documents carefully and considered their content in light of Plaintiff's letters of

July 10, 1998, and November 13, 1998. The court is unable to conclude that documents 4 through 9 constitute work product.

In *National Union Fire Ins. Co. v. Murray Sheet Metal, Inc.*, 967 F.2d 980, 984 (4th Cir.1992), the Fourth Circuit explained the work product doctrine:

> the jurisprudence of Rule 26(b)(3), [footnote omitted] ... divides work product into two parts, one of which is 'absolutely' immune from discovery and the other one only qualifiedly immune. \* \* \* [T]he pure work product of an attorney insofar as it involves 'mental impressions, conclusions, opinions, or legal theories ... concerning the litigation' is immune to the same extent as an attorney-client communication. [citation omitted]. This is so whether the material was actually prepared by the attorney or by another 'representative' of the party. Fed.R.Civ.P. 26(b)(3). All other documents and tangible things prepared in anticipation of litigation or for trial may be discovered, but only on a showing of 'substantial need.'

■ In addition, the court in *Murray Sheet Metal* indicated that documents prepared in anticipation of litigation are those that were "prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *Id.*

Applying this definition, the court cannot conclude that documents 4 through 9 are work product. None of the documents contains the mental impressions, conclusions, opinions, or legal theories of Mr. Bucari. Furthermore, there is no indication that any document was prepared in anticipation of litigation. Prior to MetLife's final denial on August 20, 1999, Plaintiff's claim for benefits was working its way through the administrative process. The court has seen no indication that Plaintiff's then counsel, Mr. Forman, intended to file suit on Plaintiff's behalf. His letter of March 17, 1999, merely inquires as to the status of Plaintiff's appeal. Although Plaintiff's letters dated July 10, 1998, and November 13, 1998, may have been available to Mr. Bucari, the court cannot conclude from the documents at issue that the threat

of litigation was "the driving force" behind the preparation of the at-issue documents by Mr. Bucari and others. *Id.* at 984. Instead, these documents were prepared in the context of and for the purpose of determining Plaintiff's claim for benefits.

In addition, the court concludes that waiver of the privilege did not occur as a result of production of a March 31, 1999, memorandum from Stanley Lanskey to AHPC's Retirement Committee, which memorandum copied Mr. Bucari. Defendant AHPC concedes that this document falls under the fiduciary exception to the attorney/client privilege, and, as such, its disclosure did not result in waiver.

Finally, the court finds that Document 10 is the only document at issue subject to the attorney/client privilege and the work product doctrine. It was created after the lawsuit in the instant case was filed in December of 2000. Furthermore, it clearly seeks a legal opinion from counsel on matters related to the action.

Based on the above, the court concludes that defendant AHPC must produce documents 1, 2, 3, 4, 5, 6, 7, 8 and 9 on or before the close of business on October 31, 2001, but that document 10 is protected by the attorney/client privilege and the work product doctrine.

*Production of Claims File and Other Documents*

Plaintiff's Supplemental Hearing Response Memorandum of Points and Authorities in Opposition to Defendants' Joint Motion to Quash and for Protective Order and Supplemental Motion to Compel and for Sanctions raises a number of arguments related to whether Defendants have properly and fully produced the complete claims file in this matter. Defendants respond that indeed, they have produced the entire claims file requested by the Plaintiff and have corrected an administrative error that caused two documents to be omitted from the original claims file production. In addition, Defendants argue that two of the documents about which Plaintiff complains, minutes from meetings of AHPC's Retirement Committee, were not part of the claims file requested by

the Plaintiff. Thus, Defendants argue that the meeting minutes were not produced earlier because they were not requested. Instead, Defendants contend that they did not realize the documents would be relevant until Plaintiff challenged the processing of his claim review and the applicable standard of review in response to recent motions for protective order filed by Defendants.

The court has considered the arguments of counsel, and finds Plaintiff's Motion unpersuasive. With respect to the administrative error associated with production of the claims file, the court is satisfied that Defendants complied with their duty to supplement under Rule 26(e) of the Federal Rules of Civil Procedure. With respect to the meeting minutes, the court finds convincing, Defendants' representations that these documents were not part of the claims file. Besides, Plaintiff now has possession of these documents, and the court is hard pressed to understand how Plaintiff can complain that he is now prejudiced by not having documents which he never requested.

Accordingly, it is hereby **ORDERED** that Plaintiff's Motion to Compel Discovery from Defendants (Document # 43) is **GRANTED in part** and **DENIED in part,** as set forth more fully above. Defendants are hereby ORDERED to produce documents 1 through 9 on or before the close of business on **October 31, 2001.** It is further hereby **ORDERED** that Plaintiff's Supplemental Hearing Response Memorandum of Points and Authorities in Opposition to Defendants' Joint Motion to Quash and for Protective Order and Supplemental Motion to Compel and for Sanctions (Document # 46) is **DENIED.**

The Clerk is requested to fax and mail copies of this Memorandum Opinion and Order to counsel of record and post this published opinion at *http://www.wvsd.uscourts.gov.*